UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMANUEL C. PRICE,<br><br>    Plaintiff,<br><br>    v.<br><br>Z. IQBAL, et. al.,<br><br>    Defendants. | No. 2:20-cv-01439-TLN-KJN P<br><br><br><br>ORDER |

I.    Introduction

    Plaintiff Immanuel C. Price, a state prisoner proceeding pro se, filed a civil rights action seeking relief under 28 U.S.C. § 1983. He alleges that, while he was housed at High Desert State Prison, defendants Iqbal, Rueter, and Gates ignored his serious medical needs by refusing to continue his prescription of gabapentin as neuropathy treatment.[1] (ECF No. 1.) He alleges that defendants' actions constituted deliberate indifference under the Eighth Amendment, negligence, and violated Government Code section 845.6. (Id. at 3-12.)

    Defendants filed a motion to dismiss on the grounds that plaintiff failed to state a medical deliberate indifference claim and that defendants are entitled to qualified immunity. (ECF Nos.

---

[1] This Court screened his complaint and determined that plaintiff's claim against defendant Kehinde was not properly joined with plaintiff's Eighth Amendment claim against the remaining defendants. (ECF No. 10 at 2.) Consequently, this Court dismissed defendant Kehinde from the action without prejudice. (ECF No. 24.)

1

39, 46, & 51.) Because plaintiff fails to state a cognizable federal claim, defendants contend that this Court should decline to exercise supplemental jurisdiction over his state law claims. (ECF Nos. 39, 46, & 51.) Plaintiff opposed this motion and filed a request for judicial notice. (ECF Nos. 41, 45, 49, & 50.) For the reasons that follow, defendants' motion to dismiss is granted, with leave to amend, and plaintiff's requests for judicial notice are denied.

II.     The Complaint

Plaintiff was diagnosed with Non-Hodgkin's Lymphoma in October 2012 while incarcerated and he underwent surgery and chemotherapy. (ECF No. 1 at 3 & Ex. A.) After chemotherapy, plaintiff experienced tingling, burning, and numbness in his hands and feet and was diagnosed with neuropathy. (Id.) Doctors treated his condition with different topical creams and medications with varying degrees of success and side effects. (Id.) Those drugs included nortriptyline, amitriptyline, duloxetine, carbamazepine, Cymbalta, venlafaxine, Effexor, Elavil, ibuprofen, naproxen, and acetaminophen, although some of those medications were prescribed for anxiety and depression. (ECF No. 1 at 3, 18, 22.)

In August 2017, a non-defendant doctor prescribed gabapentin, initially at 300 mg twice daily and increased the dosage to 800 mg twice daily. (Id. at 4, 18.) Plaintiff alleges that gabapentin offered him the most relief without any side effects. (Id.)

Plaintiff was later transferred to High Desert State Prison. (Id.) In December 2019, defendant Dr. Iqbal began tapering off plaintiff's gabapentin dosage with a goal of ending his prescription by January 19, 2020. (Id. at 4-5, 7, 20.) Plaintiff alleged that he did not talk to Dr. Iqbal about the change until January 14, 2020.[2] (Id. at 4-5, 26.) In its place, Dr. Iqbal offered plaintiff other medications, but plaintiff told Dr. Iqbal that those medications had been ineffective in the past. (Id. at 27.) Dr. Iqbal refused to extend his prescription for gabapentin. (Id. at 5, 27 ("Despite extensive counseling, [patient] refused to accept any alternatives to gabapentin. He appears to be functioning well so he does not have medical necessity for treatment with

---

[2] In a health care grievance attached to the complaint, plaintiff states that he went to clinic on December 26, 2019 to talk to a doctor about his gabapentin prescription. The medical staff told him he needed to be weighed before seeing the doctor. Plaintiff refused and left the clinic. (ECF No. 1 at 34.)

nonformulary medications.")) In medical progress notes dated February 7, 2020, it was noted that "[p]atient is here for alternatives to gabapentin. He has tried Cymbalta, carbamazepine, Effexor, Elavil, nortriptyline, ibuprofen, naproxen, and acetaminophen…He is willing to try Lyrica." (Id. at 22.) The notes also stated

> [c]ounseled patient that gabapentin only has two indications and that it is being restricted statewide, reviewing the memorandum dated April 18, 2019 with him. Counseled patient that Lyrica may also not fit his indication but will review with CME. He has never had physical therapy and is willing to try it so he does not need medication every day Requested [physical therapy]. Follow up after [physical therapy] consult.

(Id. at 22.)

In response to his prescription change, plaintiff filed a medical grievance. (Id. at 5, 32-35.) Defendant Dr. Rueter, High Desert State Prison Chief Medical Executive, affirmed Dr. Iqbal's decision. (Id. at 5-6, 29-30.) In a letter dated February 27, 2020, Dr. Rueter explained

> [p]rescriptions/orders shall be limited to the medications listed in the California Correctional Health Care Services Formulary, unless otherwise provided by the non-formulary process in accordance with the Health Care Department Operations Manual, Section 3.5.4, CCHCS Drug Formulary. The primary care provider did not document a current condition that meets the criteria for non-formulary use of gabapentin.
>
> Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider.

(Id. at 30.)

Defendant Dr. Gates, Chief Health Care Correspondence and Appeals Branch, affirmed Drs. Rueter and Iqbal's decisions. (Id. at 5-6, 29-31; see also id. at 37.)

Attached to the complaint is California Correctional Health Care Services Memorandum dated April 18, 2019 regarding gabapentin. (Id. at Ex. D at 39.) The memorandum states

> On February 12, 2019, the Systemwide Pharmacy and Therapeutics Committee reviewed gabapentin, its utilization, and recent patient-safety concerns with the drug. Given its high utilization at some institutions in the California Correctional Health Care Services, the Committee has decided to restate gabapentin's place in therapy.
>
> Gabapentin is a non-formulary medication that is FDA approved for the following two indications: (1) partial seizures and (2)

3

> postherpetic neuralgia. There is minimal and weak evidence to support gabapentin use in the treatment of other types of neuropathic pain, including diabetic neuropathy.
>
> Recent articles have questioned the safety of gabapentin as studies have found:
>
> - 40 to 65% of people prescribed gabapentin misuse the medication.
> - 15 to 22% of people abusing opioids also abuse gabapentin.
> - Autopsies and toxicology screenings discovered 22% of people who died from a drug overdose had gabapentin present in their systems.
> - Concomitant gabapentin and opioid exposure was associated with a 49% higher risk of dying from an opioid overdose.
>
> As such, five states, with more pending, have reclassified gabapentin as a controlled substance because of its propensity for abuse.
>
> The Committee urges health care providers to limit prescribing gabapentin to its FDA-approved indications as clinically appropriate.
>
> **You are directed to train institutional clinical state to implement.**

(Id. at 39.)

Between the date of this memorandum and December 2019, no other doctor adjusted plaintiff's gabapentin prescription. (Id. at 7.) He alleges that Dr. Iqbal, therefore, "was not obligated to discontinue [his] gabapentin prescription, but desired to do so to please his supervisor(s), and committed classic willful blindness…." (Id. at 7-8.) Since being taken off gabapentin, plaintiff consulted with two non-defendant doctors, one of which indicated that gabapentin is the best neuropathy medication. (Id. at 8, 41.)

III.     Legal Standards for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to

1  survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked
2  assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of
3  action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,
4  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
5  statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, plaintiff
6  must allege enough facts to state a plausible claim for relief. Twombly, 550 U.S. at 570.  "A
7  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
8  the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S.
9  at 678.

10  "As a general rule, a district court may not consider any material beyond the pleadings in
11  ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)
12  (internal quotes and citation omitted), overruled on other grounds by Galbraith v. County of Santa
13  Clara, 307 F.3d 1119 (9th Cir. 2002).  There are two exceptions that prevent any extrinsic
14  evidence from converting the Rule 12(b)(6) motion into a summary judgment motion; materials
15  which are properly submitted as part of the complaint or "matters of public record" which may be
16  judicially noticed. Id. at 688-89.  "If the documents are not physically attached to the complaint,
17  they may be considered if the documents' "'authenticity . . . is not contested' and 'the plaintiff's
18  complaint necessarily relies' on them.'" Id. at 688 (quoting Parrino v. FHP, Inc., 146 F.3d 699,
19  705-06 (9th Cir. 1998).

20  "A court may dismiss a complaint only if it is clear that no relief could be granted under
21  any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding,
22  467 U.S. 69, 73 (1984).  In general, pro se pleadings are held to less stringent standards than those
23  drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  The court has an
24  obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th
25  Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not
26  supply essential elements of the claim that were not pled. Ivey v. Board of Regents of Univ. of
27  Alaska, 673 F.2d 266, 268 (9th Cir. 1982).
28

IV.  Discussion

    A.    Eighth Amendment Deliberate Indifference Claim

Plaintiff alleges that Dr. Iqbal was deliberately indifferent to his medical needs when Dr. Iqbal decreased and subsequently discontinued his gabapentin prescription. (ECF No. 1.) Furthermore, he claims that Drs. Rueter and Gates also acted with deliberate indifference when they affirmed Dr. Iqbal's decision and declined his request to intervene with his medical grievance. (Id.) Defendants move to dismiss on the ground that plaintiff has failed to allege sufficient facts to render his claim cognizable. (ECF No. 39-1.)

The treatment a prisoner receives while incarcerated and the conditions of his confinement are subject to the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993); see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. See Farmer v. Brennan, 511 U.S. 825, 828 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). The Eighth Amendment's deliberate indifference standard is a "high legal standard." See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To state a claim, the prisoner must show that (1) objectively, the prison official's deprivation was sufficiently serious, and (2) subjectively, the prison official acted with sufficiently culpable state of mind. See Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 298-99.

To meet the objective standard, the plaintiff must show that the medical need is serious. A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). If a prisoner establishes the existence of a

serious medical need, he must also meet the subjective standard, showing that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or in the way prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Toguchi, 391 F.3d at 1060; see also Hallett v. Morgan, 296 F.3d 732, 744-45 (9th Cir. 2002).

Defendants admit that plaintiff's alleged neuropathic pain constitutes a serious medical need, satisfying the first prong of the deliberate indifference standard. (ECF No 39-1 at 6.) This Court focuses on whether plaintiff has met the second prong of the test—that the prison officials acted with a sufficiently culpable state of mind.

Accepting all factual allegations as true, this Court finds that plaintiff has not shown that defendants acted with a sufficiently culpable state of mind. The records attached to the complaint suggest that Dr. Iqbal tapered plaintiff's gabapentin prescription because the drug was reclassified as a non-formulary medication approved for two indications, neither of which was neuropathy. (ECF No. 1 at 20, 22, & Ex. D.) Dr. Iqbal discussed other medications with plaintiff. In medical progress notes dated January 14, 2020, Dr. Iqbal noted that "[d]espite extensive counseling, [patient] refused to accept any alternatives to gabapentin. He appears to be functioning well so he does not have medical necessity for treatment with nonformulary medications." (Id. at 27.) A few weeks after that, a medical progress note stated that plaintiff is seeking alternatives to gabapentin and is willing to try physical therapy and a medication called Lyrica. (Id. at 22.) Based on the medical records attached to the complaint, it does not appear that plaintiff had previously tried Lyrica for his neuropathy. (Id. at 15.) Furthermore, another medical progress note attached to the complaint indicates that another medication was helpful in treating his condition. (ECF No. 1 at 41 (stating that patient is on capsaicin cream "he says he [has] tried it in the past and it has been helpful but has not solved his neuropathy.)) This fact contradicts plaintiff's assertion that all other medications were ineffective in treating his neuropathy. See Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014) (stating

7

1 that courts do not accept as true factual allegations that are contradicted by exhibits to the
2 complaint).  The February 2020 progress note also ranked plaintiff's pain as "moderate" and
3 noted "[h]e does not appear to be in pain or distress.  He easily steps up to sit on the exam table
4 and exits exam with normal gait."  (Id. at 22.)  Drs. Rueter and Gates reviewed plaintiff's medical
5 grievances and affirmed Dr. Iqbal's decision to terminate his gabapentin prescription because he
6 did not meet the criteria for non-formulary use of the drug.  (ECF No. 1 at 29-31, 37.)  Based on
7 plaintiff's factual allegations and the complaint exhibits, this Court concludes that plaintiff has
8 failed to state an Eighth Amendment medical deliberate indifference claim upon which relief can
9 be granted.

10 Plaintiff claims that alleging that a prison official ignored the instructions of a treating
11 physician is sufficient to state a deliberate indifference claim.  See Wakefield v. Thompson, 177
12 F.3d 1160, 1165 (9th Cir. 1999) ("In short, allegations that a prison official has ignored the
13 instructions of a prisoner's treating physician are sufficient to state a claim for deliberate
14 indifference.")  This assertion oversimplifies the law.  The parties have not identified authority,
15 nor is this Court aware of any, holding that a new treating physician must preserve the initial
16 treatment plan prescribed by the inmate's original doctor.  Instead, courts usually find that
17 plaintiff has stated a deliberate indifference claim when a prison official refuses or inexplicitly
18 fails to provide a prescribed medication contrary to a doctor's order.  See, e.g., Egberto v. Nevada
19 Dep't of Corrs., 678 F. App'x 500, 504 (9th Cir. 2017) (prison officials denied prisoner his
20 prescribed spinal injections); Stinson v. Galaza, 73 F. App'x 312, 313 (9th Cir. 2003) (defendants
21 refused to provide ice prescribed by prisoner's doctor to alleviate pain from drug therapy);
22 Thornberry v. Bal, No. 2:17-CV-0953-TLN-DMC-P, 2021 WL 983294, at *14 (E.D. Cal. Mar.
23 16, 2021), adopting report and recommendation, 2021 WL 2038321 (E.D. Cal. May 21, 2021).
24 Based on the complaint allegations, that is not what occurred here.  Rather, plaintiff complains
25 that Dr. Iqbal failed to follow his prior doctor's treatment plan when he stopped his gabapentin
26 prescription according to prison policy.  However, in cases like this one, courts have found that a
27 prisoner failed to state a medical deliberate indifference claim when a doctor tapered off a non-
28 formulary prescription drug.  See, e.g., Wilson v. Montgomery, No. 14cv1383 JAH (NLS), 2015

1  WL 12762174, at *5 (S.D. Cal. Dec. 23, 2015), adopting report and recommendation, 2016 WL
2  6804437 (S.D. Cal. Aug. 8, 2016); Olivier v. Grounds, No. C 12-0176 SBA, 2014 WL 4983683,
3  at *4-5 (N.D. Cal. Sept. 30, 2014); Brady v. Fishback, No. 1:06-cv-00136 ALA (P), 2006 WL
4  604945, at *2, 6 (E.D. Cal. Mar. 9, 2009).[3]

Although plaintiff disagreed with Dr. Iqbal's course of treatment, a mere difference in opinion concerning the appropriate medical treatment cannot be the basis of an Eighth Amendment claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc). When there are alternative courses of medical treatment, plaintiff "must show that the treatment the doctors chose was medically unacceptable under the circumstances" and that the doctors "chose this course in conscious disregard of an excessive risk to plaintiff's health." Id. Here, Dr. Iqbal tapered off plaintiff's gabapentin prescription because the Systemwide Pharmacy and Therapeutics Committee reviewed gabapentin, identified that "[t]here is minimal and weak evidence to support gabapentin use in the treatment of other types of neuropathic pain," and urged "health care providers to limit prescribing gabapentin to its FDA-approved indications as clinically appropriate." (ECF No. 1 at 20, 22, & Ex. D.) Plaintiff's diagnosis was not one of the two FDA-approved indicators for the drug, nor did plaintiff exhibit medical symptoms that would warrant prescribing a non-formulary drug. (Id. at 26-27 & Ex. D.) Plaintiff has failed to make any plausible factual allegations to suggest that Dr. Iqbal's course of treatment was medically unacceptable under the circumstances. To the contrary, the complaint alleges that Dr. Iqbal suggested other medications to treat his neuropathy, and plaintiff rejected them. (Id. at 26-27.) A patient is not entitled to request a prescription for a specific medication, and a doctor's refusal to

---

[3] A prisoner may be able to state a claim for relief if he alleges that defendants discontinued his course of treatment simply based on prison policy without any input from a treating physician. See, e.g., O'Brien v. Saha, No. 19-cv-01957-JLS (JLB), 2021 WL 321971, at *21 (S.D. Cal. Jan. 30, 2021), adopting report and recommendation, 2021 WL 960693 (S.D. Cal. Mar. 15, 2021). Here, the records attached to the complaint indicate that Dr. Iqbal discontinued his gabapentin prescription because it was not medically indicated for his neuropathy, and he did not exhibit medical symptoms that would warrant prescribing a non-formulary drug. (ECF No. 1 at 26-27 & Ex. D.)

comply with such a request does not amount to an Eighth Amendment violation. See Arellano v. Sedighi, No. 15-cv-02059-AJB-BGS, 2020 WL 5877832, at *18 (S.D. Cal. Oct. 1, 2020), adopting report and recommendation, 2021 WL 7711170 (S.D. Cal. May 7, 2021); Tucker v. Daszko, No. 2:17-cv-1798 KJN, 2017 WL 4340090, at *3 (E.D. Cal. Sep. 29, 2017) (citing cases). Notably, a few weeks later, plaintiff was amenable to trying a different medication and physical therapy to treat his neuropathy. (ECF No. 1 at 22.) Furthermore, when plaintiff was being tapered off gabapentin, his medical progress notes indicate that he appeared to be alert, oriented, and not in acute distress. (ECF No. 1 at 26-27 ("He appears to be functioning well so he does not have medical necessity for treatment with nonformulary medications."); see also id. at 23-24.) Plaintiff's difference of opinion with defendants does not rise to the level of deliberate indifference, and this Court dismisses plaintiff's Eighth Amendment claim without prejudice.

Relatedly, plaintiff has asked this Court to take judicial notice of three documents: (1) California Correctional Healthcare Services Care Guide Parts 1 and 2; (2) Health Care Department Operations Manual, Section 3.5.4; and (3) Drug Formulary. (ECF No. 41; ECF No. 45 at 8; ECF No. 50.) He claims that these documents are evidence that "Dr. Iqbal could have continued to prescribe the medication…because plaintiff had numerous documented treatment failures prior to being prescribed gabapentin in the first place." (ECF No. 45 at 9-10.) Furthermore, he argues that these documents support his claim that Drs. Rueter and Gates knew that "Dr. Iqbal had discontinued plaintiff's gabapentin without effective alternative, yet failed to order any relief at all." (Id. at 13.) Federal Rule of Evidence 201(b) provides that a federal court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As to California Correctional Healthcare Services Care Guide, plaintiff provides only an excerpt of the document. Plaintiff has not filed copies of the relevant Health Care Department Operations Manual and Drug Formulary. By omitting or including mere excerpts of these documents, plaintiff has failed to provide the Court with the necessary information to assess his request. Fed. R. Evid. 201(c); see also Center for Cmty. Action & Env't Just. v. Friends of Riverside Airport, LLC, No. EDCV 17-1091 JGB, 2017 WL 10511577, at *5 (C.D. Cal. Sep. 28,

10

2017). Therefore, this Court denies plaintiff's requests for judicial notice.[4]

B.  Affirmative Defense: Qualified Immunity

In the alternative, defendants argue that they are entitled to qualified immunity. Qualified immunity shields officials from civil liability if their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because this Court finds that plaintiff failed to state a cognizable Eighth Amendment claim, it need not reach this alternative basis for dismissing the complaint.

C.  Supplemental Jurisdiction

Based on the above recommendations, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and orders that his state law claims be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001).

D.  Leave to Amend

If the court finds that a complaint should be dismissed for failure to state a claim, it has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that

---

[4] Alternatively, even if this Court considered the Healthcare Services Care Guide in ruling on the motion to dismiss, it would not save his complaint. The guide states that gabapentin is non-formulary and that the only FDA indications are partial onset seizures and post herpetic neuralgia, which is consistent with the complaint exhibits. (Compare ECF No. 41 at 19 with ECF No. 1 at Ex. D.) The guide also warns that "[g]abapentin…may be abused and diverted in the correctional health setting and are not on formulary; recommend using other therapeutic agents that are preferred for neuropathic pain." (ECF No. 41 at 14.) Accepting all factual allegations in the complaint as true, Dr. Iqbal acted in compliance with the guide when he tapered plaintiff off his gabapentin prescription and took measures to identify other treatments for his neuropathic pain. To the extent that plaintiff alleges Dr. Iqbal acted with deliberate indifference when he failed to refer him for Interdisciplinary Team Review after treatment failure with four medications, he is mistaken. The guide lists that as one factor to consider when determining whether to refer a patient; it does not mandate a referral. (Id. at 4.)

11

the deficiencies of the complaint could not be cured by amendment."). Plaintiff has not previously been given an opportunity to amend his complaint, and it is not clear that plaintiff cannot allege facts demonstrating deliberate indifference in this context. As a result, this Court gives plaintiff leave to amend his complaint.

VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's requests for judicial notice (ECF Nos. 41 & 50) are denied;
2. Defendants' motion to dismiss (ECF No. 39) is granted; and
3. Plaintiff's complaint is dismissed; and
4. Within thirty days from the date of this order, plaintiff shall file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated: June 29, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/TAA/pric1439.mtd