UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMANUEL C. PRICE, | No. 2:20-cv-01439-TLN-KJN |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| Z. IQBAl, et al., | |
| Defendants. | |

I.  Introduction

Plaintiff Immanuel Price, a state prisoner proceeding without counsel and in forma pauperis, filed a civil rights action pursuant to 42 U.S.C. § 1983.  He alleges that, while housed at High Desert State Prison, defendants Iqbal, Rueter, and Gates were deliberately indifferent to his serious medical needs by discontinuing, or affirming the decision to discontinue, his gabapentin prescription, which had been previously prescribed to treat his chemotherapy induced neuropathy.  Pending before this Court is defendants' motion for summary judgment.  (ECF No. 60.)  For the reasons stated below, this Court recommends granting summary judgment in favor of defendants.

II.  Background

Plaintiff filed a civil rights complaint in July 2020.  (ECF No. 1.)  This Court granted defendants' motion to dismiss with leave to amend the complaint.  (ECF No. 54.)

On July 6, 2022, plaintiff filed a first amended complaint.  (ECF No. 55.)  Plaintiff alleges

1

that Dr. Iqbal discontinued his gabapentin prescription in December 2019 and January 2020, constituting deliberate indifference to a serious medical need under the Eighth Amendment and state law medical malpractice. (Id. at 4.) Although Dr. Iqbal explained that gabapentin is a non-formulary drug and not indicated to treat neuropathy, plaintiff asserts that Dr. Iqbal could have continued his prescription. (Id.) Dr. Iqbal offered several other medications, but plaintiff alleges that these alternatives were ineffective in the past and that Dr. Iqbal was aware of these treatment failures. (Id. at 6-8.) Plaintiff claims that Dr. Iqbal's only concern was discontinuing gabapentin, not effective treatment of his nerve pain. (Id. at 7.) He also alleges that Defendants Gates and Rueter were deliberately indifferent to plaintiff's serious medical needs and committed medical malpractice by rejecting his medical grievances. (Id. at 15-16.)

Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that: (1) defendants did not act with deliberate indifference to plaintiff's serious medical needs; (2) plaintiff's disagreement with his physician's medical judgment is not actionable under § 1983; (3) defendants are entitled to summary judgment in connection with plaintiff's medical malpractice claim; and (4) defendants are entitled to qualified immunity. (ECF No. 60.) Plaintiff opposed the motion, and defendants filed a reply. (ECF Nos. 63-64.)

III.     Legal Standards for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need

---

[1] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery to support its contention that a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computs., Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

trial." Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments; see also Matsushita, 475 U.S. at 587.

In resolving a summary judgment motion, the court examines facts cited by the parties from the record including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. The court must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (citation omitted).

On August 30, 2022, defendants provided plaintiff with contemporaneous notice of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 60-1.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).

IV.   Undisputed Facts[2]

1. During the relevant time period, plaintiff was a state prisoner in the custody of California Department of Corrections and Rehabilitation ("CDCR"). (ECF No. 55 at 2-4.)

2. In 2012, plaintiff was diagnosed with non-Hodgkin's Lymphoma. He was treated with chemotherapy and developed neuropathy and a burning sensation and numbness in his hands and feet. (ECF No. 55 at 3-4; ECF No. 60-3 at 7.)

---

[2] For purposes of summary judgment, the Court finds these facts are undisputed following its review of ECF document numbers 55, 60, 60-2, 60-3, 63, and documents referenced therein. Where plaintiff has failed to properly address defendants' assertion of facts as required, the undersigned considers those facts undisputed. See Fed. R. Civ. Pro. 56(e)(2).

3. For several years, plaintiff's doctors prescribed him medications that failed to treat his nerve pain.  (ECF No. 55 at 3-4; ECF No. 60-3 at 7.)

4. Around August 2017, a non-defendant doctor prescribed gabapentin to treat plaintiff's neuropathy.  (ECF No. 55 at 4.)

5. In an April 18, 2019 California Correctional Health Care Services memorandum, the Systemwide Pharmacy and Therapeutics Committee instructed health care providers that "Gabapentin is a non-formulary medication that is FDA approved for the following two indications:  (1) partial seizures and (2) postherpetic neuralgia.  There is minimal and weak evidence to support gabapentin use in the treatment of other types of neuropathic pain, including diabetic neuropathy."  "The Committee urges health care providers to limit prescribing gabapentin to its FDA-approved indications as clinically appropriate."  (ECF No. 60-3 at 5.)

6. Starting in December 2019, without complaint from plaintiff and without consultation, Dr. Iqbal decreased the dosage of plaintiff's gabapentin prescription with the intention of discontinuing it completely.  (ECF No. 55 at 4; ECF No. 60-3 at 7.)

7. On January 14, 2020, plaintiff spoke with Dr. Iqbal and expressed his desire to continue taking gabapentin.  Dr. Iqbal explained that gabapentin is a non-formulary drug for neuropathic pain and that plaintiff "appears to be functioning well so he does not have medical necessity for treatment with nonformulary medications."  (ECF No. 55 at 4; ECF No. 60-3 at 2, 7-8.)

8. In the verified amended complaint, plaintiff acknowledges that Dr. Iqbal was being truthful when he said that gabapentin was designated as a non-formulary drug by CDCR's medical system.  (ECF No. 55 at 4.)

9. Dr. Iqbal offered plaintiff several alternative prescription options including: oxcarbazepine, carbamazepine, amitriptyline, nortriptyline, duloxetine, and venlafaxine.  Plaintiff, despite extensive counseling, refused to try any of those alternative options.  (ECF No. 55 at 5; ECF No. 60-3 at 2, 8.)

10. Plaintiff stated that he had already tried alternative medications and they were

ineffective. He refused to try any of the alternative medications again. (ECF No. 55 at 4, 6; ECF No. 60-3 at 2, 7-8.)

11. During the January 14, 2020 appointment, Dr. Iqbal noted that plaintiff was not in acute pain and was able to engage in his normal daily activities. (ECF No. 60-3 at 2, 7-8.)

12. On February 7, 2020, plaintiff spoke with a non-defendant nurse practitioner about his neuropathy and requested gabapentin. She noted that plaintiff was also willing to try Lyrica or methadone and physical therapy to manage his neuropathic pain so he does not have to take medication daily. (ECF No. 60-3 at 2-3, 10-11; ECF No. 63 at 4.)

13. The nurse practitioner noted that she counseled plaintiff that gabapentin was not medically indicated for neuropathy and was being restricted statewide. She also determined that plaintiff was not in acute pain or distress during the appointment. (ECF No. 60-3 at 3, 11.)

14. At a March 3, 2020 appointment with a non-defendant doctor at another institution, plaintiff again requested gabapentin because he was suffering without pain medication. The non-defendant doctor noted that no EMG test had been done to establish that plaintiff has neuropathy, and that plaintiff had recently received a steroid injection in the shoulder and participated in physical therapy. He further observed that plaintiff was not in acute pain or distress during the appointment. (ECF No. 60-3 at 13-14.)

15. Defendants Rueter and Gates did not provide medical treatment to plaintiff; instead, they responded to his appeal of his inmate grievance, affirming Dr. Iqbal's decision to discontinue gabapentin. (ECF No. 55 at 13, 35-40.)

V.  Disputed Facts

Plaintiff disputes the above fact that gabapentin is not medically indicated to treat conditions other than partial seizures and postherpetic neuralgia. (ECF No. 63 at 9.) To create a disputed issue of fact, he cites an excerpt from the California Correctional Health Care Services Care Guide stating that gabapentin "can be considered in cases with objective evidence of severe

neuropathic pain after documented trials of 1st and 2nd line agents." (ECF No. 55 at 31, 44-45; see also ECF No. 63 at 3-4 ("Attached to the amended complaint are copies of the CCHCS policy and care guide that clearly show that gabapentin, a medication designated nonformulary, can be considered for treatment of neuropathic pain."))  These excerpts are not sufficient to create a disputed issue of fact.  They are dated September 2018, which predates the April 2019 memorandum they attempt to discredit.  The April 2019 memorandum expressly states that "[g]iven its high utilization in some institutions in the California Correctional Health Care Services, the Committee has decided to restate gabapentin's place in therapy." (ECF No. 60-3 at 5.)  Plaintiff has not provided sufficient evidence to raise this as a disputed fact.

VI.   Discussion

   A.   Eighth Amendment Deliberate Indifference Claim

Defendants claim they are entitled to summary judgment because they were not deliberately indifferent to plaintiff's serious medical needs when they discontinued, or affirmed the decision to discontinue, plaintiff's gabapentin prescription, which was not FDA approved to treat chemo-induced neuropathy.  Plaintiff's refusal to try alternative medications and ongoing request for gabapentin is merely a disagreement with defendants' course of treatment, which does not constitute an Eighth Amendment deliberate indifference claim, defendants argue.  Plaintiff disagrees, asserting that defendants were deliberately indifferent because gabapentin can be used for neuropathic pain, particularly given his known prior treatment failures.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to the serious medical needs of an inmate.  See Farmer v. Brennan, 511 U.S. 825, 828 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  The Eighth Amendment's deliberate indifference standard is a "high legal standard."  See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

To establish an Eighth Amendment violation, the prisoner must meet a two-part test; he

must show that (1) objectively, the prison official's deprivation was sufficiently serious, and (2) subjectively, the prison official acted with sufficiently culpable state of mind. See Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 298-99. To meet the objective standard, plaintiff must show that the medical need is serious. A medical need is serious "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). If a prisoner establishes the existence of a serious medical need, he must also meet the subjective standard, showing that the prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. To establish deliberate indifference, there must be (1) "a purposeful act or failure to act on the part of the defendant," and (2) the indifference resulted in harm. McGuckin, 974 F.2d at 1060. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or in the way prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Toguchi, 391 F.3d at 1060; see also Hallett v. Morgan, 296 F.3d 732, 744-45 (9th Cir. 2002).

Here, plaintiff has established (and defendants do not contest) that his neuropathy constitutes a serious medical issue. (ECF No. 55 at 3-4; ECF No. 60-3 at 7; ECF No. 60 at 11.) But plaintiff's claim cannot survive summary judgment because he has not shown a genuine issue of material fact that defendants acted with deliberate indifference towards treating his serious medical need. Dr. Iqbal identified that plaintiff should not be taking gabapentin to treat his neuropathy because it is a non-formulary medication that is only FDA approved for partial seizures and postherpetic neuralgia. (ECF No. 60-3 at 5.) Plaintiff's neuropathy does not fall into either category. As a result, Dr. Iqbal tapered him off of gabapentin. Although Dr. Iqbal did not consult with plaintiff before doing so, in a January 2020 visit, he explained the change to plaintiff, noted that plaintiff "appears to be functioning well so he does not have medical necessity for treatment with nonformulary medications," and offered alternative medications. (ECF No. 55 at

4-5; ECF No. 60-3 at 2, 7-8.) Despite Dr. Iqbal's counseling, plaintiff refused all alternative medications. (ECF No. 55 at 4, 6; ECF No. 60-3 at 2, 7-8.) In the subsequent months, plaintiff met with two non-defendant medical providers to request gabapentin. In February 2020, one medical provider explained, as Dr. Iqbal had, that gabapentin is not medically indicated for neuropathy and was being restricted statewide. (ECF No. 60-3 at 3, 11.) She also determined that plaintiff was not in acute pain or distress. (Id.) In March 2020, another medical provider noted that plaintiff was not in acute pain or distress during the appointment and that no EMG test had been done to establish that plaintiff has neuropathy. (Id. at 13-14.) Drs. Rueter and Gates affirmed Dr. Iqbal's decision to terminate the gabapentin prescription because plaintiff did not meet the criteria for non-formulary use of the drug. (ECF No. 55 at 13, 35-40.) Based on these undisputed facts, Dr. Iqbal's discontinuation of gabapentin, and Drs. Rueter's and Gates's affirmation of that decision, does not constitute deliberate indifference towards plaintiff's serious medical need.

Plaintiff argues Dr. Iqbal acted with sufficiently culpable state of mind because he knew plaintiff had treatment failures with the alternative medications and that gabapentin was the only effective medication. This claim is not supported by the record. Although plaintiff claims to have tried other medications without success, a few weeks after his consultation with Dr. Iqbal, plaintiff told a non-defendant nurse practitioner that he was willing to try Lyrica or methadone and physical therapy to manage his neuropathic pain. (ECF No. 60-3 at 2-3, 10-11; ECF No. 63 at 4.) The medical records do not indicate whether plaintiff had previously tried Lyrica or methadone.[3] (See ECF No. 60-3 at 8 (Dr. Iqbal's medical notes state that plaintiff refused the following previously tried medications: oxcarbazepine, carbamazepine, amitriptyline, nortriptyline, duloxetine, and venlafaxine.)) These records confirm that Dr. Iqbal's decision to discontinue gabapentin was not made with deliberate indifference towards plaintiff's medical needs, and that alternative treatment was available.

---

[3] In his opposition brief, plaintiff argues that Lyrica "is the same drug as gabapentin." (ECF No. 63 at 4.) He offers no evidence to support this assertion, and the record suggests that they are different drugs. (See ECF No. 55 at 31 (CCHCS Care guide lists gabapentin and Lyrica (generic name is pregabalin) as separate drugs)).

Although plaintiff disagreed with Dr. Iqbal's course of treatment, a mere difference in opinion concerning the appropriate medical treatment cannot be the basis of an Eighth Amendment claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc). When there are alternative courses of medical treatment, plaintiff "must show that the treatment the doctors chose was medically unacceptable under the circumstances" and that the doctors "chose this course in conscious disregard of an excessive risk to plaintiff's health." Id. Plaintiff has not presented any evidence to create a genuine issue of material fact that Dr. Iqbal's course of treatment was medically unacceptable under the circumstances. To the contrary, defendants have established plaintiff's neuropathy diagnosis was not one of the two FDA-approved indicators for the drug, nor did plaintiff exhibit medical necessity to be treated with a non-formulary drug. (ECF No. 60-3 at 2-3, 5, 7-8, 10-11, 13-14; ECF No. 55 at 4.) As explained above, plaintiff rejected the alternative medications offered to him. (ECF No. 55 at 4, 6; ECF No. 60-3 at 2, 7-8.) A patient is not entitled to request a prescription for a specific medication, and a doctor's refusal to comply with such a request does not amount to an Eighth Amendment violation. See Toguchi, 391 F.3d at 1058; see also O'Brien v. Saha, No. 21-55326, 2022 WL 16945892, at *1 (9th Cir. Nov. 15, 2022); Laigo v. King County, No. 19-35517, 829 F. App'x 232 (9th Cir. Nov. 10, 2020); Gauthier v. Stiles, 402 F. App'x 203 (9th Cir. Oct. 29, 2010); Arellano v. Santos, No. 3:18-cv-02391-BTM-WVG, 2020 WL 6271031, at *3 (S.D. Cal. Oct. 26, 2020); Parlin v. Sodhi, No. 10-6120 VBF (MRW), 2012 WL 5411710, at *5 (C.D. Cal. Aug. 8, 2012). The fact that plaintiff disagrees with defendants' medical opinion does not rise to the level of deliberate indifference, and this Court recommends granting summary judgment on the Eighth Amendment claim in favor of defendants.

### B. State Law Medical Malpractice Claim

Defendants also seek summary judgment on plaintiff's medical malpractice claim, arguing that their decision to discontinue gabapentin did not amount to medical malpractice. (ECF No. 60 at 14.) Plaintiff states that he has satisfied the elements of a medical malpractice claim. (ECF No. 63 at 5-7.)

To state a medical malpractice claim, plaintiff must establish: "'(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.'" Chakalis v. Elevator Sols., Inc., 205 Cal. App. 4th 1557, 1571 (2012) (citation omitted); see also Manning v. United States, No. 2:19-cv-00494 TLN AC PS, 2020 WL 7264759, at *4 (E.D. Cal. Dec. 10, 2020).  Neither plaintiff nor defendants have submitted expert medical evidence regarding the medical malpractice claim.

However, defendants have met their initial burden on summary judgment by demonstrating an absence of a genuine issue of material fact. California law requires that plaintiff submit expert medical evidence to support a medical malpractice claim, unless the negligence is obvious to a layperson. Johnson v. Superior Court, 143 Cal. App. 4th 297, 305 (2006). "Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff." Powell v. Kleinman, 151 Cal. App. 4th 112, 123 (2007). California law requires causation to "be proven within a reasonable medical probability based on competent expert testimony." Jones v. Ortho Pharm. Corp., 163 Cal. App. 3d 396, 402 (1985). Therefore, "expert testimony [is] essential to prove causation," and without such expert testimony, "plaintiff fail[s] to meet his burden on an essential element of the cause of action." Gotschall v. Daley, 96 Cal. App. 4th 479, 484 (2002). Under Rule 56, because plaintiff failed to show required elements for medical malpractice (through expert evidence of breach and causation), defendants are entitled to summary judgment on plaintiff's state law claim as well. See Gonzalez v. United States, No. 19-16935, 2022 WL 1658224, at *1 (9th Cir. May 25, 2022) (affirming grant of summary judgment in favor of defendant because plaintiff failed to submit expert medical evidence to support medical malpractice claim); Woodward v. United States, No. 2:13-cv-00048-MCE-EFB, 2016 WL 5159589, at *8 (E.D. Cal. 2016) (granting summary judgment "because a medical malpractice claim without the required expert testimony concerning standard of care presents no factual issues for trial).

C.   Affirmative Defense: Qualified Immunity

Lastly, defendants argue that they are entitled to qualified immunity. Qualified immunity shields officials from civil liability if their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This involves a two prong analysis: (1) has plaintiff shown a violation of a constitutional right, and (2) was that right clearly established at the time of defendants' conduct? Id. at 232; Saucier v. Katz, 533 U.S. 194, 201 (2001). Because this Court finds that plaintiff failed to show that his constitutional rights were violated, defendants are also entitled to qualified immunity

VII.   Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 60) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 2, 2023

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

TAA/price1439.msj.kjn